SEASON–ALL INDUSTRIES, INC., a corporation, Appellant,

v.

TURKIYE SISE VE CAM FABRIKALA-RI, A. S., a corporation, and Seaply Glass Corporation, a corporation.

No. 18014.

United States Court of Appeals, Third Circuit.

Argued Dec. 19, 1969.

Decided April 22, 1970.

Joseph A. Katarincic, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa. (J. Richard Lauver, Pittsburgh, Pa., on the brief), for appellant.

Harold Gondelman, Baskin, Boreman, Sachs, Gondelman & Craig, and John M. Feeney, Pittsburgh, Pa., for appellees.

Before McLAUGHLIN, FREEDMAN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This essentially simple case comes to us on a record which is obscure on the ultimate question whether there exists a genuine issue of fact which forbids the entry of summary judgment for the defendants.

This is a diversity action. Plaintiff, a Pennsylvania corporation, sued Seaply Glass Corporation, a New York corporation, which imported and distributed glass, and the Turkiye Sise Ve Cam Fabrikalari A.S., a Turkish corporation, whose principal office is in Turkey, which manufactured glass imported and distributed by Seaply. The plaintiff sought to enjoin an arbitration proceeding which Seaply had begun against it before the American Arbitration Association, and also sought an accounting.

The complaint alleged that the defendants from time to time alone or in concert sold glass to plaintiff and entered into contracts with plaintiff "with respect to the disposition of claims which plaintiff had against either or both of them, and which agreements defendants have breached."

■ Seaply filed a motion to dismiss. The motion was sworn to by its president and contained as exhibits a series of "Order Acknowledgements" for sales of glass by Seaply to plaintiff from October 1967 to October 1968. Turkiye is listed in most, but not all, of these orders as

the supplier. The orders state that Seaply was acting "as agent only for a foreign principal whose identity has been disclosed," that acceptance of the order would become effective only on approval by the principal, and that Seaply's liability was limited to the use of reasonable care in transmitting the order to the foreign principal for acceptance. The orders then provide: "Any controversy arising from this sale shall be settled by and in accordance with the rules of the American Arbitration Association in New York." Seaply's motion to dismiss averred that it had filed a demand for arbitration of the controversy between the parties with the American Arbitration Association, and attached a copy of the demand for arbitration. Since the motion contained factual allegations which were not already on the record, it was properly treated under Rule 12(b) as a motion for summary judgment.

■ The other defendant, Turkiye, filed a motion for judgment on the pleadings because it was not subject to service under Pennsylvania's long-arm statute, because on the merits the complaint alleged no contract between plaintiff and Turkiye and no breach of a contract by Turkiye, and because Turkiye was not a party in the arbitration proceeding which plaintiff was seeking to enjoin. Since no answer had been filed to the complaint the motion for judgment on the pleadings was improper as such, and it was rightly treated by the court as a motion for summary judgment (see Rule 12(c)).

Additional factual matter was brought on the record by plaintiff's answers to Seaply's interrogatories. They suffer from a complicated brevity which renders it difficult to isolate clearly their factual content. They do, however, indicate that there were defects in glass shipped and discussions by plaintiff with representatives of Seaply regarding settlement.[1]

1. The substance of plaintiff's answers to Seaply's interrogatories appears in paragraph 2(a)—there is no 2(b)—which reads as follows:

"In the period of approximately November 16 to November 26, 1968, certain discussions took place including Mr. Booth, Frank Gorell and Franklyn

In this state of the record and while interrogatories directed by plaintiff to Seaply and Turkiye separately were still unanswered and motions for protective orders by both Seaply and Turkiye were pending, the court, on May 9, 1969, entered ex parte on Seaply's motion for summary judgment and its motion for a protective order and on Turkiye's motion for judgment on the pleadings what is apparently a standard form of order. It required the moving parties to file their briefs within 10 days, and curiously enough, "dismissed" the motions for want of timely prosecution if the briefs were not so filed, and if timely filed provided that the "dismissal" should then be vacated "and the court shall make a further order disposing of said motion or directing what further proceedings shall be had with regard thereto." [2] Although it is not noted on the docket entries, the defendants' briefs apparently were filed within the prescribed time, and on June 5, 1969, the court entered another ex parte order reciting their timely filing and directed plaintiff to file its brief in opposition within five days. The order provided that plaintiff's failure to file its brief in time would be treated as its consent to the relief sought by the motions, but if it was so filed "the Court shall make a further order disposing of said motion or directing what further proceedings shall be had with regard thereto." On June 27, 1969, plaintiff's brief apparently having been filed, the court entered another ex parte order in which it recited the filing of briefs on both sides and granted defendants' motion for summary judgment, dismissed the action and declared Seaply's motion for protective order moot.[3] The basis of the court's decision apparently was that plaintiff conceded that it had purchased all the glass involved on orders which contained the arbitration clause, and that this bound the parties to arbitration of their dispute regardless whether it arose directly from the sale or from negotia-

R. Gorell in Indiana, Pennsylvania. At that time, the discussions involved compensation or adjustments for defective glass furnished by shipment on the ship 'Notos' as well as 'Neptune.' No agreement was reached with respect to replacement of 16 carloads of defective glass shipped on the 'Notos.' Mr. Booth, on behalf of defendant Seaply, acquiesced in paying for defective glass shipped prior to the 'Notos' shipment and for a few items of defective glass removed from the cars and on the premises of defendant and which was shipped on the 'Notos.' In addition, defendant Seaply, through its President, Mr. Booth, in the course of those discussions indicated that the dispute would be resolved by (1) credits to plaintiff for defective glass delivered prior to the 'Notos' shipment; (2) claims against the insurance carrier without any regard to when the defect arose including defect in manufacture; and, (3) he, Mr. Booth, further agreed that he would assist plaintiff in any litigation that it would pursue against the other defendant to this action, namely, Turkiye Sise Ve Cam Fabrikalari, A.S. It was then left to the plaintiff that he could either seek credits against defendant Seaply, attempt to recover all losses including the 16 carloads on 'Notos' by insurance claim or by proceeding in a lawsuit against the other defendant in this suit. The plaintiff elected the credits."

2. The order reads as follows:
"IT IS ORDERED that the moving party file within ten days from the date of this order a brief in support thereof; and that if said brief be not filed within said period of time, the said motion be and the same hereby is dismissed and overruled and the relief prayed for therein denied, for want of timely prosecution; provided that if the said brief be filed within said period of time, such dismissal and denial shall thereupon be vacated and cease to be operative or in force, and the Court shall make a further order disposing of said motion or directing what further proceedings shall be had with regard thereto."

3. This is our construction of the court's order. In fact, its language is more indirect and reads:
"IT IS ORDERED that defendants' motions [not specifying which] be and the same hereby are granted, and plaintiff's action dismissed; the motion of Seaply Glass Corporation [apparently the motion for a protective order] hereby becoming moot."

tions which sought to resolve the controversies which arose from the sale.

■ It is, of course, fundamental that summary judgment, which denies to a litigant his right to a trial, is to be granted only in a clear case. A party's right to trial, therefore, may not be cut off by a summary judgment if a genuine issue of fact exists whose resolution in his favor on a trial would bar the entry of judgment against him.[4] Since the 1963 amendment to Rule 56, we have fully applied the principle authorizing summary judgment if it is clear from an examination of the pleadings, affidavits, answers to interrogatories and depositions on the record, that no genuine issue of fact exists.[5]

■■ The foundation of the court's decision is its statement that "it appears to be conceded by plaintiff that all glass sold to plaintiff was sold pursuant to invoices containing the [arbitration] clause." Plaintiff vigorously denies making any such concession. The record, which alone must guide us, shows that Seaply's demand for arbitration covered at the most but two of the 12 orders which Seaply attached to its motion to dismiss. On the face of the record, therefore, no arbitration proceeding had been invoked by Seaply on the other 10 orders. A defendant, of course, is not entitled to stay a civil action on a contract because it contains a provision for arbitration which he refuses to invoke. Thus, even if it be assumed, as the court held, that the subsequent settlement discussions are included in the provision for arbitration of "Any controversy arising from this sale,"[6] the record does not show that Seaply sought arbitration on any but two of the 12 orders.

■ There is even less support for the summary judgment in favor of Turkiye. First, the district court did not decide the jurisdictional question, in the absence of which it is difficult to see why a decision on the merits was reached.[7] Moreover, there is nothing in the orders naming Turkiye as a supplier which shows its agreement to be bound by the arbitration provision, a view which is confirmed by the fact that Seaply alone demanded arbitration and Turkiye is not a party in the arbitration proceeding. Nor does Turkiye appear to have been involved in the settlement discussion so tantalizingly mentioned in plaintiff's answers to Seaply's interrogatories. Indeed, these answers allege that Seaply agreed to assist plaintiff in any litigation it would pursue against Turkiye, thus indicating that litigation and not arbitration was the route which they expected plaintiff to take against Turkiye.

■ Finally, in view of the obscurity in the record regarding the facts which are touched on in the complaint and plaintiff's answers to Seaply's interrogatories, we believe the case is peculiarly one in which summary judgment should not have been entered until plaintiff obtained a decision on the protective motion of both Seaply and Turkiye so that if the motions were denied plaintiff would have the benefit of a record containing the factual version of each defendant.[8]

■ The state of the record also leads to a consideration of the procedure

4. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ; First National Bank of Washington v. Langley-Howard, Inc., 391 F.2d 207 (3 Cir. 1968).

5. See Lockhart v. Hoenstine, 411 F.2d 455, 458 (3 Cir. 1969) ; Robin Construction Company v. United States, 345 F.2d 610, 612-614 (3 Cir. 1965).

6. See generally, e. g., American Home Assurance Co. v. American Fidelity & Cas. Co., 356 F.2d 690 (2 Cir. 1966) ; Kanmak Mills v. Society Brand Hat Co., 236 F.2d 240, 250 (8 Cir. 1956) ; Galveston Maritime Ass'n. v. South Atlantic & Gulf Coast Dist., 234 F.Supp. 250, 251-252 (S.D.Tex.1964) ; Application of Reconstruction Finance Corp., 106 F.Supp. 358, 361-362 (S.D.N.Y.1952), aff'd. R. F. C. v. Harrison & Crosfield, 204 F.2d 366 (2 Cir.), cert. denied 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953).

7. See Schramm v. Oakes, 352 F.2d 143, 149 (10 Cir. 1965) ; Arrowsmith v. United Press International, 320 F.2d 219, 221 (2 Cir. 1963) ; 5 Wright & Miller, Federal Practice and Procedure § 1351 at 563 (1969).

followed in this case. Apparently it is the practice of the district court where a motion for summary judgment is filed to order the moving party to file his brief and on its receipt, if there is some prima facie showing, to require the opposing party to file his brief. The orders set no time for a hearing, although Rule 56(c) requires that a motion for summary judgment must be served at least 10 days before the time "fixed for the hearing," and authorizes the adverse party to serve opposing affidavits "prior to the day of hearing." The rule does not contemplate that a motion for summary judgment shall be disposed of on briefs, at least until the moving and adverse parties have had an opportunity to file their respective supporting and answering affidavits, and to supplement them if need be. Here in a factually murky situation, with plaintiff's efforts to obtain answers to its interrogatories and to take depositions balked by motions for protective orders which were undecided, it was error to enter summary judgment. It is true that on the record as it stood the court was presented with an almost incoherent and contradictory statement of facts in plaintiff's answers to Seaply's interrogatories. But summary judgment is not a punishment for the incoherence of a pleading and such a preliminary dismissal of an action without trial is to be made only if it clearly appears that there is no genuine issue of fact to be decided.

▆▆▆ Moreover, we believe that it is undesirable in general for a district court to enter summary judgment after receiving briefs and without holding a hearing unless it makes clear in its order that all affidavits and counter-affidavits must be filed with the briefs.[9] It is true that the last paragraph of Rule 78 authorizes a court to expedite its business by a "provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition."[10] We need not decide whether this provision is applicable to a motion for summary judgment,[11] which if granted disposes with finality of a claim or a defense.[12] At the least, as a matter of good practice, we believe resort should not be had to this provision on a motion for summary judgment unless it is made clear beyond all doubt that the parties must present their affidavits and counter-affidavits in addition to whatever

8. See Bane v. Spencer, 393 F.2d 108, 109 (1 Cir. 1968); Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016, 1022 (3 Cir. 1942). Rule 56(c) was amended in 1963 to expressly include "answers to interrogatories" within the range of materials to be considered by the trial court on motion for summary judgment.

9. See generally Georgia Southern & F. Ry. Co. v. Atlantic Coast Line R. Co., 373 F.2d 493, 496–498 (5 Cir.), cert. denied 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967); Dredge Corp. v. Penny, 338 F.2d 456, 461–462 (9 Cir. 1964); Enochs v. Sisson, 301 F.2d 125 (5 Cir. 1962).

10. See also Rule 43(e).

11. Plaintiff argues that in view of Local Rule 4(a) (2) of the Western District of Pennsylvania it had a right to expect notification of a time and place of argument on the defendants' motions. The relevant paragraph of Local Rule 4(a) (2) reads:

*Miscellaneous Motions:* These are motions which require notice and a copy thereof to be served on the opposing party or counsel, together with an acceptance of service thereof. The notice shall set forth the time when said motion will be filed with the Clerk of Court. In the event the motion is not consented to by all parties, the Clerk shall thereafter place same on the next appropriate Argument List and sufficient notice in advance shall be given by the Clerk as to the time and place of said Argument."

Due to our disposition of this case, we need not decide the effect of this local rule on individual orders entered by the court.

12. See Hazen v. Southern Hills National Bank of Tulsa, 414 F.2d 778, 780 (10 Cir. 1969); Sarelas v. Porikos, 320 F.2d 827 (7 Cir. 1963), cert. denied 375 U.S. 985, 84 S.Ct. 519, 11 L.Ed.2d 473 (1964); Bagby v. United States, 199 F.2d 233 (8 Cir. 1952); 6 Moore, Federal Practice ¶ 56.14 [1] at 2258 (2d ed. 1966). Compare cases cited supra, n. 9.

facts appear in the pleadings, depositions, answers to interrogatories, and admissions on file. Only then will it be proper to determine whether a genuine issue of fact exists which requires a trial. In the usual case it is more appropriate to set a motion for summary judgment down for hearing as Rule 56(c) provides, and to make the date of hearing the time limit for both sides in the presentation of their factual claims. Indeed, it is only in this way that a full opportunity can be afforded for compliance with the provision of Rule 56(c) authorizing the adverse party to serve opposing affidavits "prior to the day of hearing."

The burden was on the moving parties to demonstrate that on the record they were entitled to summary judgment because it was clear that there existed no genuine issue of fact, and any doubt must be resolved against them.[13] This burden was not satisfied by the present obscure record which makes it impossible to say that no genuine issue of fact exists.

The order of the district court, therefore, will be vacated and the case remanded for further proceedings.

13. Lockhart v. Hoenstine, 411 F.2d 455–458 (3 Cir. 1969); Janek v. Celebrezze, 336 F.2d 828, 834 (3 Cir. 1964).