**File Name: 05a0190n.06**
**Filed: March 15, 2005**
**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 04-1337**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SANKYO CORPORATION, et al. | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| -vs- | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| NAKAMURA TRADING | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee. | | |

Before: NELSON and SUTTON, Circuit Judges; WELLS, District Judge[*]

WELLS, District Judge. Appellants Sankyo Corporation, Sankyo North America Corporation, and Satoru Kagitani appeal the district court's dismissal of their complaint for lack of subject matter jurisdiction. Appellants' complaint sought a determination on whether certain claims, if filed by the appellee, would be subject to arbitration. Because we conclude that such a question presents an ephemeral dispute which fails the case or controversy requirement of Article III of the United States Constitution, we affirm the judgment of the district court.

---

[*]The Honorable Lesley Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

I.

In 1997, Masahiro Nakamura and Satoru Kagitani, Chairman and CEO of Sankyo

Corporation, a Japanese manufacturer, entered into discussions about the creation of a

joint enterprise which would market and sell Sankyo Corporation products in the United

States.  These discussions culminated in the formation of appellee Nakamura Trading

Corporation ("NTC"), an Illinois corporation jointly owned by Mr. Nakamura and Sankyo

Corporation.[1]

After carrying on their business relationship for several years without a signed

contract, NTC and Sankyo Corporation entered into a written Basic Distributorship

Agreement ("Agreement") on April 1, 2002.  The Agreement provided that NTC would

market and sell Sankyo Corporation's products in overseas markets while functioning as

its commission agent.  In addition to outlining the rights and responsibilities of both

parties, the Agreement, in Article 17, provides that when international disputes arise:

> [A]rbitration proceedings shall take place in the State of Illinois if [Sankyo
> Corporation] sues [NTC], and arbitration proceedings shall take place in
> Hyogo Prefecture if [NTC] sues [Sankyo].[2]

(JA 93).  The Agreement specified that it was effective until April 1, 2004 and "shall be

extended for another year if neither [party] objects."  (JA 93).  If either party wished to

terminate the Agreement, it was required to provide three months advance notice in

writing.

---

[1]  NTC was 60% owned by Mr. Nakamura and 40% owned by Sankyo Corporation.

[2]  For the purpose of analysis, we assume, without deciding, that this provision constitutes a valid, mandatory arbitration provision.

For several reasons, including NTC's lack of profitability, Sankyo Corporation sent a letter purporting to terminate the Agreement with NTC, effective May 18, 2003. During a July 12, 2003 meeting, in which the wind-up of their business relationship was discussed, Mr. Nakamura told Mr. Kagitani that Sankyo Corporation still owed NTC $3,000,000. When Sankyo denied any such obligation, Mr. Nakamura sent several letters reiterating his $3 million demand and advising Mr. Kagitani that NTC was prepared to litigate this case in a United States District Court. Included with his August 10, 2003 letter, Mr. Nakamura sent Mr. Kagitani a draft complaint raising several common law claims and a statutory claim based on Illinois law. In his correspondence, Mr. Nakamura imposed several deadlines – September 10, 2003, September 28, 2003, and the end of October – by which litigation would be initiated if no response or counterproposal was forthcoming. Despite Sankyo's refusal to agree to Mr. Nakamura's demands, the first two deadlines passed without incident.

On October 28, 2003, plaintiffs Sankyo Corporation, Sankyo North American Corporation, and Mr. Kagitani (collectively referred to as "Sankyo") elected to file their own lawsuit in United States District Court for the Eastern District of Michigan against NTC, seeking declaratory and injunctive relief. Specifically, Sankyo sought a declaratory judgment that any claims brought by NTC against Sankyo relating to the Agreement, including those set forth in the draft complaint, were subject to mandatory arbitration in Hyogo Prefecture, Japan, and an injunction preventing NTC from bringing such claims in any tribunal other than an arbitration tribunal in Hyogo Prefecture,

3

Japan.[3]   Although Sankyo's complaint sought to determine the proper jurisdiction of NTC's possible claims, Sankyo contended that it had no intention of seeking any affirmative recovery against NTC because it had concluded that NTC was uncollectable. Sankyo asserted that the district court had jurisdiction over its complaint pursuant to 9 U.S.C. § 203.[4]

On October 30, 2003, the district court judge ordered Sankyo to show cause why its lawsuit should not be dismissed because of the absence of an actual case or controversy.  After briefing by both parties, the district court dismissed the action, concluding that Sankyo's complaint sought a "hypothetical ruling" which did not involve an actual case or controversy.

## II.

The central issue on appeal is whether the district court had jurisdiction over the claims asserted by Sankyo in its complaint.[5]   Federal jurisdiction is limited to actual

---

[3]  Sankyo's complaint could be interpreted as seeking an order to force NTC to litigate any claims it has, including those set forth in the draft complaint, in an arbitration proceeding.  However, during oral arguments, Sankyo conceded that a court could not force NTC to litigate claims it elects not to pursue.

[4]  Section 203 provides:

An action or proceeding falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

The Convention allows federal courts, under some circumstances, to compel arbitration either in this country or abroad in international commercial disputes.  9 U.S.C. §§ 202 and 206.

[5]  In addition to challenging the district court's conclusion, Sankyo takes issue with the district court's refusal to hold an evidentiary hearing and its factual finding that there was no lawsuit "looming on the horizon."  Since no case or controversy is presented by Sankyo's complaint regardless of the likelihood of a NTC lawsuit, factual findings about the likelihood of such a lawsuit were unnecessary. Accordingly, Sankyo's objections, to the district court's factual finding or the procedures used to reach it, lack merit.

4

cases or controversies. *See North Am. Natural Resources, Inc. v. Strand*, 252 F.3d 808, 812 (6th Cir. 2001) (explaining that "[o]ne of the fundamental axioms of American jurisprudence is that a federal court may consider only actual cases or controversies.") This jurisdictional prerequisite is firmly rooted in the United States Constitution which provides, in pertinent part, that "[t]he judicial power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties . . . [and] to Controversies . . . ." U.S. Const., Art. III, sec. 2, cl. 1. This case or controversy requirement prevents federal courts from rendering advisory opinions or considering hypothetical or abstract questions. *Hall v. Beals*, 396 U.S. 45, 48 (1969)*; see also U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 446 (1993); *McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc.*, 298 F.3d 586, 597 (6th Cir. 2002); *Strand*, 252 F.3d at 812-13.

While the difference between an abstract question and a case or controversy is one of degree, not discernible by any precise test, the basic inquiry is whether:

> the conflicting contentions of the parties . . . present a real, substantial controversy between the parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.

*Babbitt v. Farm Worker's Nat'l Union*, 442 U.S. 289, 297-98 (1979); *see also Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (applying the same test in the declaratory judgment context).[6] This threshold issue is one that the Court of Appeals reviews *de novo*.

---

[6] Although Sankyo did not specifically invoke the Declaratory Judgment Act, 28 U.S.C § 2201, in its complaint, it clearly seeks declaratory relief governed by that statute. The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction" a federal court "may" give a declaratory judgment, a power permissive, not mandatory. *Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984). When defendant seeks injunctive relief in addition to declaratory relief, the requirement of an "actual controversy" in the Declaratory Judgment Act is identical to the "case or controversy" requirement of Article III. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937). Accordingly, the requisite "case or controversy" analysis is the same with respect to Sankyo's separate requests for injunctive and declaratory relief.

*Strand*, 252 F.3d at 812. To the extent that the district court's jurisdictional ruling rests on factual findings, the Court of Appeals must accept those findings unless they are clearly erroneous. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

Declaratory judgment actions, like the present one, often require courts to face the difficult task of distinguishing "between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Kardules v. City of Columbus*, 95 F.3d 1335, 1343-44 (6th Cir. 1996). To satisfy the case or controversy requirement, the dispute "must be definite and concrete" and must allow for "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Haworth*, 300 U.S. at 240-41.

Sankyo contends that the district court failed to apply the proper test for determining the existence of an actual case or controversy, given the facts of this case. It suggests that the appropriate test for determining the existence of a case or controversy in the context of potential litigation is whether defendant's actions have created a reasonable apprehension on the plaintiff's part that the defendant will initiate litigation. Based on that "test" and Sankyo's assertion that the evidence in the record supported a conclusion that it faces a "reasonable apprehension" of litigation, Sankyo argues that the district court incorrectly dismissed its case. We disagree with Sankyo's articulation of the "test" to be applied in the context of this case and with its resulting conclusion.

Beginning with a faulty premise, Sankyo overstates the test for the existence of a case or controversy in the context of threats of future litigation and the applicability of this so-called rule to the present case. Although a few circuits have employed the "reasonable apprehension" language in cases involving the possibility of future litigation, *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992) (concluding that a justiciable case or controversy exists if the "defendant's actions cause the plaintiff to have a 'real and reasonable apprehension that he will be subject to liability.'"); *Collin County, Texas v. Homeowners Association for Values Essential to Neighborhoods*, 915 F.2d 167, 172 (5th 1990) (dismissing a declaratory judgment action because plaintiffs' had "no apprehension" of a lawsuit); *Atlas Air, Inc. v. Air Line Pilots Assoc., Intl.*, 232 F.3d 218, 227 (D.C. Cir. 2000) (concluding that union posturing in labor negotiations or threats to respond to future changes to a collective bargaining agreement "is insufficient to create the reasonable apprehension of litigation necessary for the claim to be justiciable"), none of these cases stand for the categorical rule suggested by Sankyo.

To the contrary, to meet the jurisdictional requirements of Article III's "case" or "controversy" requirement, "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). The Supreme Court has clearly identified what qualifies as injury in fact: "[W]e have said may times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (some quotations marks omitted); *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of*

7

*Nashville and Davidson County, Tennessee*, 274 F.3d 377, 399 (6th Cir. 2001) ("Ripeness requires that the 'injury in fact be certainly impending.'").

In our view, the cases relied on by Sankyo are unhelpful because each involves a very specific factual situation and none reach the particular fact pattern at issue in this case. The critical facts of this case are:

- Sankyo has no plan to pursue any affirmative claims against NTC;

- NTC has threatened litigation against Sankyo; and,

- NTC's claims are arguably subject to arbitration.

While the underlying facts are not uncommon, Sankyo's response is somewhat atypical. More commonly, NTC would decide whether or not to sue Sankyo, and, if it elected to do so, Sankyo, at that time, would file a motion to compel arbitration. In this case, Sankyo is attempting to take preemptive action by filing a lawsuit to settle the arbitration question in advance. Such a novel approach is precluded by the Case and Controversy requirement of the United States Constitution.

Absent one unreported case from the Northern District of Alabama which did not explicitly address case or controversy issues,[7] all of the cases cited by Sankyo are inapposite. Sankyo's case law essentially consists of actions filed by plaintiffs for one of two purposes: 1) to compel arbitration of their affirmative claims when defendants have resisted arbitration;[8] or 2) to obtain a declaratory judgment to resolve the substantive

---

[7] *See ITT Consumer Financial Corp. v. McNaughton*, 1991 WL 519584 (N.D. Ala., April 12, 1991).

[8] *See Prudential Lines, Inc. v. Exxon Corporation*, 704 F.2d 59, 61 (2nd Cir. 1983); *Schieffsbetriebs GMBH & Co. KG v. Pan American Grain*, 1994 WL 584657 (S.D. N.Y., October 24, 1994); *Galveston Maritime Association, Inc. v. South Atlantic & Gulf Coast District, Int's Longshoremen's Assoc.*, 234 F. Supp. 250, 251-52 (S.D. Tex. 1994); *Greenwich Marine, Inc. v. S.S. Alexandra*, 225 F. Supp. 671, 673 (S.D.N.Y. 1964); *Atlanta Shipping Corp. v. Cheswick-Flanders & Co.*, 463 F. Supp. 614 (S.D. N.Y. 1978). In this case, on the other hand, plaintiffs do not seek to arbitrate their claims but rather

rights of the parties.[9] The present case is of a wholly different nature because Sankyo does not seek arbitration of its claims against NTC or a declaration regarding the substantive rights of the parties. Rather, Sankyo's declaratory judgment action is merely directed at resolving the forum for NTC's potential claims, which NTC may or may not pursue. This would be a very different case if Sankyo brought an action seeking a declaration about its legal rights and responsibilities–for example, seeking a declaration that it did not breach the agreement. Such an action, unlike the present one, might resolve an actual dispute.

Sankyo has misplaced its reliance on *Robin Products Co. v. Tomecek*, 465 F.2d 1193 (6th Cir. 1972). *Robin Products* set out the test for determining whether a justiciable controversy exists in a declaratory judgment action involving patent infringement. 465 F.2d at 1195-96. Although Sankyo attempts to analogize the facts of this case to *Robin Products* and to patent infringement cases more generally, its attempts fail. The issuance of declaratory judgments in patent infringement cases may resolve uncertainty faced by the alleged infringer by conclusively resolving the infringement question. In this case, on the other hand, Sankyo's allegations of uncertainty – possible claims that may or may not be brought by NTC – will not be relieved by the declaration it seeks. Even if the district court could resolve the

---

seek to force arbitration of defendant's potential claims.

[9] *See Spokane Indian Tribe*, 972 F.2d at 1094-95 (9th Cir. 1992) (declaratory judgment determining whether plaintiff's lotto machines were exempt from state regulations); *National Basketball Association v. SDC Basketball Club, Inc.*, 815 F.2d 562, 566 (9th Cir. 1987) (declaratory judgment determining plaintiff's potential anti-trust liability); *Morris v. Dearborne*, 69 F. Supp. 2d 868, 880 (E.D. Tex. 1999) (declaratory judgment seeking determination of whether certain government actions against plaintiff were permissible). Plaintiffs are not asking the district court to resolve any of the substantive rights of the parties; rather, plaintiffs are seeking an order that no district court could resolve the parties' underlying substantive rights.

jurisdictional question presented by Sankyo's complaint, uncertainty would remain in the form of NTC's potential claims.

Notwithstanding Sankyo's extensive citations, there is a dearth of case law supporting its contention that a federal court could provide the relief it seeks, consistent with the case or controversy requirement of the United States Constitution. Under traditional procedures for adjudicating questions of arbitrability, a plaintiff seeking arbitration of its own claims may, if the defendant refuses to arbitrate, resort to the courts to compel it; or, conversely, a defendant can move to compel arbitration of claims which a plaintiff seeks to litigate in the courts. These two approaches to determining the propriety of a particular forum for resolving disputes make good sense – once an actual claim is asserted, courts decide whether the parties must arbitrate. Sankyo's approach, on the other hand, places a district court in the untenable position of deciding a question not yet presented, on the basis of uncertain and potentially shifting facts. Under Sankyo's approach, a potential defendant could obtain a declaration of arbitration (or even non-arbitration) of claims that it "reasonably apprehends" plaintiff asserting. Such a "test" requires a district court to decide the difficult question of the proper forum for resolving disputes before those disputes are clearly articulated and actually asserted.

Sankyo sought to terminate its relationship with NTC almost two years ago. Since that time, NTC has made various demands and threats regarding litigation but has filed no action against Sankyo. During oral argument, Sankyo took the position that NTC was just "waiting for a decision from this Court" to file its complaint. Even if that were true, Sankyo could seek to compel arbitration at that time, when NTC's claims are

10

clearly evident. Under those circumstances, the court would be resolving an actual case or controversy, not merely engaging in a hypothetical exercise.

Accordingly, we hold that Sankyo's lawsuit seeking a determination whether or not NTC's potential, but as yet unfiled, claims are subject to mandatory arbitration does not present an actual case or controversy as required for the constitutional exercise of a district court's jurisdiction. Sankyo's "reasonable apprehension" test does not translate to actions which merely seek to resolve the forum for possible or even likely disputes. Regardless of the likelihood of possible litigation, Sankyo may not obtain the advisory opinion it seeks – whether NTC claims, if filed, would be subject to arbitration. Such a request does not amount to an actual case or controversy as it does not allow for "a decree of conclusive character."

III.

For the reasons set forth above, we AFFIRM the district court's decision to dismiss appellant's lawsuit for lack of jurisdiction.

11